UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

SEP 21 2026 AM11:27
FILED - USDC - FLMD - FTM

Yasmani Ordaz Saez,

Plaintiff,

v.

Experian Information Solutions, Inc.,

Defendant.

Case No.: 2:26-CV-2591-SPC-KRH

COMPLAINT FOR DAMAGES

AND DEMAND FOR JURY TRIAL

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Yasmani Ordaz Saez is an individual residing in Cape Coral, Lee County, Florida, and a consumer under 15 U.S.C. section 1681a(c). He brings this action on his own behalf under the Fair Credit Reporting Act (FCRA) and proceeds pro se under 28 U.S.C. section 1654.

2. Defendant Experian Information Solutions, Inc. (Experian) is an Ohio corporation with its principal office at 475 Anton Boulevard, Costa Mesa, California 92626. Experian regularly assembles and evaluates consumer-credit

information for compensation and furnishes consumer reports using interstate commerce. It is a consumer reporting agency under 15 U.S.C. section 1681a(f).

3. Experian is registered to do business in Florida. Its registered agent for service in Florida is CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324. Experian is the only defendant.

4. This Court has subject-matter jurisdiction under 28 U.S.C. section 1331 and 15 U.S.C. section 1681p because the claims arise under federal law. This action does not invoke diversity or supplemental jurisdiction.

5. Experian purposefully conducts consumer-reporting business in Florida. The claims arise from its reporting about Plaintiff in connection with Florida credit transactions and its handling of his dispute. Experian maintained his file with his Cape Coral address, directed dispute communications to him there, and requested and received his identification through its online process. These claim-related activities support personal jurisdiction under Federal Rule of Civil Procedure 4(k)(1)(A), Florida Statutes section 48.193(1)(a), and due process.

6. Venue is proper under 28 U.S.C. section 1391(b)(2). Plaintiff initiated the Capital One credit-offer request and submitted and pursued the balance dispute online from his home in Cape Coral. Experian's ensuing dispute communications were directed to him there. A substantial part of the events concerning the later credit evaluation and the handling of the dispute occurred in this district. The earlier dealership visit occurred in Doral, Florida.

7. Alternatively, venue is proper under 28 U.S.C. section 1391(b)(1), (c)(2), and (d), because Experian is the sole defendant and is subject to personal jurisdiction through the claim-related contacts with this district described above, treating the district as a separate state for venue purposes. Lee County lies within the Fort Myers Division.

## II. FACTUAL ALLEGATIONS

### A. Personal credit information and the truck transaction

8. Experian maintained credit information about Plaintiff individually, including his Discover, Capital One Platinum, Apple Card, and American Express Gold accounts. On information and belief, that information was collected and expected to be used, at least in part, to evaluate his eligibility for personal credit. The challenged information concerns his personal credit file, not a separate corporate credit file.

9. The use, expected use, and collection purposes addressed in 15 U.S.C. section 1681a(d)(1) support the classification of the challenged communications as consumer reports. See Yang v. Government Employees Insurance Co., 146 F.3d 1320, 1324-25 (11th Cir. 1998). Plaintiff's intended use of the truck was commercial self-employment; the requested borrower and owner was Plaintiff individually. Ordaz Logistics LLC is not a plaintiff, and this action seeks no damages belonging to that entity.

10. While still living in Washington, Plaintiff spent months preparing a plan to work with a 26-foot truck. He planned routes, explored contractual opportunities, and contacted freight brokers and dispatchers. He moved to Florida intending to pursue that plan.

11. On April 17, 2026, Plaintiff visited Prime One Auto Sales LLC in Doral, Florida, seeking financing for a 26-foot Freightliner truck using his personal credit and in his own name. His brother, Yunior Ordaz Saez, accompanied him.

12. In connection with that transaction, the dealership obtained and gave Plaintiff a printed report headed "Experian-Style Report Generated from Experian Data," dated April 17, 2026. It identified Plaintiff and his personal credit accounts. The printout lists a FICO Classic V8 Auto Score of 747 and includes "No recent revolving balances" among its score factors.

13. Margaret, the dealership representative who attended to Plaintiff, specifically told him that the financing was rejected because of high balances on his credit cards reported by Experian. During that explanation, she highlighted amounts on the report. Plaintiff personally heard her explanation, and Yunior was present and heard it as well.

14. Plaintiff could not complete the planned truck-financing transaction.

B. The identified accounts and documented balances

15. Discover it Chrome account ending in 8152 closed on April 9, 2026, with a balance of USD 1,133.02. Discover's next statement records eight security-dispute credits dated April 12, 2026, totaling USD 1,133.02 and offsetting that balance in full. Those credits were USD 524.99, 125.86, 96.80, 76.78, 8.44, 60.58, 148.49, and 91.08. The next listed purchases occurred on May 3, 5, and 7, not before the April 17 visit or the May 1 score date discussed below.

16. Plaintiff had a screenshot of the April 12 Discover adjustments and submitted it with his April 18 dispute. The later statement for April 10 through May 9 corroborates those dated credits; it is not alleged to have existed or to have been submitted with the April 18 complaint. The listed activity supports a reconstructed Discover balance of zero after the credits and before the May purchases.

17. Capital One Platinum account ending in 1993 had a credit balance of USD 13.00 in Plaintiff's favor at its April 11, 2026 closing. The statement shows a USD 500.00 credit limit and no minimum payment due. The credit limit was not an amount Plaintiff owed.

18. Plaintiff's Apple Card issued by Goldman Sachs Bank USA showed a March 31, 2026 balance of USD 0.21, consisting of interest, rather than a substantial current debt. A later Apple Card statement records both the previous monthly balance and previous total balance as zero as of April 30, 2026. These are the

balances for their respective dates, not an assertion that every statement closed at exactly zero.

19. Plaintiff's American Express Gold account ending in 8006 showed a credit balance of USD 2,461.26 in his favor at its April 10, 2026 closing and an amount due of zero. That credit balance was not an outstanding debt of USD 2,461.26.

20. On information and belief, the Experian information furnished for the April 17 transaction materially overstated the current indebtedness of one or more of the identified accounts by failing to accurately reflect the applicable account credits and balances. The factual basis for this allegation is the dated account information above, the Discover-adjustment screenshot, and Margaret's explanation attributing the rejection to high card balances reported by Experian.

21. The disputed factual representation is high current card indebtedness inconsistent with those account records. A credit-limit figure marked L or a historical-high-balance figure marked H is not alleged to be a current debt merely because it appears in the printout. The claim concerns inaccurate current-debt information, or an objectively misleading presentation of that information, attributable to Experian.

22. The alleged overstatement was material to the financing evaluation and, based on the reason Margaret communicated, was a substantial factor in the rejected transaction and loss of that individual financing opportunity.

C. Plaintiff's balance dispute and identification submissions

23. On April 18, 2026, Plaintiff personally submitted CFPB complaint number 260418-31520693 from his home in Cape Coral, directing his dispute to Experian. He identified the April 17 financing transaction, challenged materially inaccurate revolving balances, explained the conflict with creditor records, and requested reinvestigation, verification with the furnishers, correction, and an explanation of the discrepancy.

24. Plaintiff attached his Capital One Platinum statement closing April 11, the Apple Card March statement, the American Express Gold statement closing April 10, the Discover statement closing April 9, and the screenshot of the April 12 Discover adjustments. These materials identified the creditors, the relevant accounts, statement dates, and recorded balances. The screenshot explained the credits offsetting the balance on the Discover statement.

25. The CFPB portal records forwarding the complaint to Experian on April 18. Experian's April 22 interim response acknowledged the complaint and stated that it would review it and provide a final response.

26. Experian emailed Plaintiff on April 30 and May 5, 2026. Both messages invoked FCRA section 611(a)(3)(A), stated that information concerning the dispute was insufficient, and requested identification of disputed items and corrected information. They also requested personal identification, including

identity and address documents. The emails did not identify this CFPB complaint number or particular disputed accounts.

27. After each communication, Plaintiff personally opened the provided link and submitted the personal information and photographs of his driver's license and Social Security card requested by the displayed screens. He completed those submissions on both occasions. The screens he encountered requested identity verification rather than a new account-by-account explanation of the balance dispute.

28. Plaintiff's submissions were his own direct responses to Experian's requests in the continuing dispute process. He had already supplied the account statements and Discover-adjustment screenshot with his original complaint.

29. On June 17, 2026, Experian issued its final response to the CFPB complaint. It expressly stated that it had reviewed Plaintiff's concerns and information, including attachments supplied through the portal and directly to Experian. It nevertheless stated that it could not process the dispute because it was not specific, requested disputed-item names and account numbers, and said that it had mailed Plaintiff a credit report.

30. Plaintiff did not receive the credit report that Experian said it had mailed. The final response did not provide findings addressing the current balances and adjustments in the identified account records.

31. The dispute and its attachments identified the transaction date, the subject of the alleged error, the individual creditors and accounts, and the account records against which the challenged indebtedness could be checked. Plaintiff alleges that this information was sufficient to investigate the balance discrepancy. On information and belief, Experian declined to process the dispute without reasonably evaluating those materials together.

32. On June 17, Plaintiff submitted feedback rejecting Experian's explanation and renewing his request for verification and correction. The CFPB closed the complaint process with an explanation; it did not adjudicate the accuracy of the balances or award damages.

D. The subsequent Capital One evaluation

33. From his home in Cape Coral, Plaintiff made an online request for a credit-card offer from Capital One, N.A. Capital One's letter dated May 2, 2026 stated that it could not offer him a card. The letter described the request as an offer inquiry, not a formal credit-card application, and said that the request did not affect his score.

34. The reverse of the letter identified an Experian-sourced credit score of 732 dated May 1, 2026. Among the adverse score factors, the letter stated in Spanish that the amount owed on revolving accounts was very high. The front separately listed insufficient experience with large credit amounts or credit lines, revolving

accounts, and credit-card accounts, and insufficient revolving-credit history, as reasons for the no-offer decision.

35. On information and belief, Experian furnished materially overstated current-debt information for this subsequent evaluation concerning the identified accounts. That allegation is based on the revolving-balance factor, the Discover records showing offsetting credits before May 1, the Apple record of zero balances as of April 30, and the earlier dealership explanation. Plaintiff alleges that the inaccurate information contributed to the unfavorable evaluation; he does not treat a score factor as identical to the letter's separate decision reasons.

36. The Capital One evaluation followed the April 18 balance dispute and Experian's April 22 acknowledgment. This later-report claim concerns the accuracy of information supplied for that evaluation, not a contention that thirty days had already elapsed from April 18 by May 1.

E. Plaintiff's individual injuries

37. After the April 17 rejection, Plaintiff experienced intense anguish and a deeply depressed mood because the truck project he had prepared for months could not proceed as planned. He felt that the work plan underlying his move to Florida had collapsed. His emotional state adversely affected his relationship with his wife.

38. The distress continued beyond the day of rejection. The later unfavorable credit evaluation and Experian's refusal to process the documented balance

dispute prolonged and aggravated his frustration concerning his personal credit. Although he has gradually improved, he continues to experience a sense of emptiness and distress associated with the lost opportunity and unresolved reporting issue.

39. Plaintiff changed his work plan and acquired a Ram ProMaster cargo van through a separate transaction dated May 6, 2026, involving him and Ordaz Logistics LLC. He began working with the van approximately one week after purchasing it. The later van transaction is distinct from the proposed individual Freightliner financing.

40. Plaintiff incurred travel expenses for the unsuccessful truck transaction, which he presently estimates at approximately USD 200. He paid no dealership deposit. He seeks recovery of personal economic loss only to the extent causally attributable to an FCRA violation and legally recoverable, not the full price of either vehicle or a guaranteed amount of projected business revenue.

41. Plaintiff seeks compensation for his own loss of access to the identified financing opportunities, resulting emotional distress, and proven personal economic loss. He seeks no recovery for an injury belonging to Ordaz Logistics LLC and no duplicate compensation for the same injury under multiple counts.

## III. COUNT I - UNREASONABLE REPORTING PROCEDURES

15 U.S.C. section 1681e(b)

42. Plaintiff incorporates paragraphs 1 through 22 and 33 through 41. He incorporates paragraphs 23 through 32 to establish notice relevant to the later reporting, not to attribute the completed April 17 rejection to a subsequent reinvestigation omission.

43. Whenever it prepared a consumer report, Experian was required to follow reasonable procedures to assure maximum possible accuracy. That standard encompasses information that is factually incorrect or presented in an objectively misleading way. Erickson v. First Advantage Background Services Corp., 981 F.3d 1246, 1251-52 (11th Cir. 2020).

44. On information and belief, Experian failed to use reasonable procedures to reconcile the current-debt information supplied in the identified evaluations with the applicable credits and balances of the disputed accounts. It thereby furnished the material overstatements alleged in paragraphs 20 and 35. For the later evaluation, its receipt of the specific balance dispute and supporting account records further put it on notice of the need to examine the challenged data.

45. The challenged information was communicated for third-party credit evaluations. The alleged inaccurate portrayal contributed substantially to the unsuccessful truck financing and, on information and belief, to the subsequent

unfavorable Capital One evaluation, causing the individual credit-related and emotional injuries described above.

46. Experian's failure was negligent within 15 U.S.C. section 1681o. As an alternative concerning post-notice conduct, Plaintiff alleges on information and belief that supplying materially overstated current indebtedness in disregard of the identified contradictory records constituted knowing or reckless noncompliance within 15 U.S.C. section 1681n. This alternative is based on the notice and documented account credits, not solely on an unfavorable credit result.

## IV. COUNT II - UNREASONABLE REINVESTIGATION

### 15 U.S.C. section 1681i(a)

47. Plaintiff incorporates paragraphs 1 through 9, 15 through 21, 23 through 32, and 37 through 41. This count addresses Experian's handling of the dispute after notice and the resulting injuries, not the April 17 rejection that preceded notice.

48. Plaintiff personally notified Experian of the disputed account indebtedness through his own complaint and attachments directed to Experian, followed by his direct responses through Experian's linked intake process. Experian acknowledged receiving and reviewing dispute information and attachments through the CFPB portal and directly from Plaintiff. Plaintiff alleges that this personally submitted notice and ensuing direct exchange satisfied the notification requirement of section 1681i(a)(1)(A).

49. Experian was required to conduct a reasonable reinvestigation, review and consider relevant consumer-provided information, and give required notice and relevant information to the furnishers under section 1681i(a)(1), (2), and (4). A decision to terminate the dispute as insufficient had to be reasonable under section 1681i(a)(3). Information found inaccurate, incomplete, or unverifiable had to be treated as required by section 1681i(a)(5).

50. The account statements and adjustment screenshot provided identifiable records for investigating the disputed current indebtedness. On information and belief, Experian unreasonably classified the dispute as nonspecific without evaluating those records together, matching the identified accounts to Plaintiff's file, and assessing the credit adjustments against the challenged balances. Its refusal prevented a reasonable reinvestigation and the consideration and communication of relevant information required by the statute.

51. Experian's acknowledgment of the materials and its refusal to process the dispute are the factual bases for this allegation concerning its internal handling. The reasonableness of a reinvestigation depends on the information supplied to the agency and the investigation warranted by that notice. See Losch v. Nationstar Mortgage LLC, 995 F.3d 937, 945-47 (11th Cir. 2021).

52. The unreasonable refusal to address the documented balance dispute prolonged and aggravated Plaintiff's actual emotional distress concerning

unresolved credit information after notice. These additional injuries are distinct from claiming that the later handling caused the earlier dealership rejection.

53. Experian's handling was negligent under 15 U.S.C. section 1681o. Alternatively, Plaintiff alleges on information and belief that disregarding sufficiently identified contradictory account records while acknowledging their receipt and review was knowing or reckless noncompliance under 15 U.S.C. section 1681n. He seeks the statutory remedies appropriate to the degree of noncompliance proved.

## V. PRAYER FOR RELIEF

54. Plaintiff requests judgment against Experian and the following relief, without duplicate recovery for the same injury:

A. Actual damages proved at trial, including emotional distress and legally recoverable personal economic loss caused by the violations, under 15 U.S.C. sections 1681o(a)(1) and 1681n(a)(1)(A).

B. Alternatively to actual damages for proven willful noncompliance, statutory damages of USD 100 to USD 1,000 under section 1681n(a)(1)(A).

C. Punitive damages under section 1681n(a)(2) upon proof of the required knowing or reckless noncompliance.

D. Taxable costs, any reasonable attorney's fees legally incurred and recoverable if counsel later appears, and interest as authorized by law.

E. Such other relief as the Court is authorized to award under the claims pleaded.

VI. JURY DEMAND

55. Under Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Yasmani Ordaz Saez
Plaintiff, pro se
324 El Dorado Blvd S
Cape Coral, FL 33991
Telephone: 786-494-0221
Email: ordazyasma5@gmail.com

Date: